EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* FRAN-CISCO GALENO CABÁN y ARCÁNGEL FELICIÉ, acusados y apelantes.

Núm. 9811.—*Sometido:* Febrero 11, 1943.  *Resuelto:* Febrero 16, 1943.

*Gaspar Gerena Bras,* abogado de los apelantes; *R. A. Gómez, Fiscal del Tribunal Supremo,* abogado de El Pueblo, apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del tribunal.

Emiliano Borrero denunció ante la corte municipal de Utuado a Francisco Galeno Cabán y a Arcángel Felicié porque "el 13 de julio de 1941, y en el barrio de Viví Arriba de Utuado . . . maliciosamente y actuando juntos y de común acuerdo y contra la voluntad y prohibición del denunciante, destruyeron una construcción u obra de la propiedad del denunciante, consistente en unos zocos de madera del

país y el varal para colocar el techo, construcción que era para una cocina de la casa del denunciante, la que tiene un valor de doce dólares.''

La imputación fué calificada como constitutiva de un delito de daños maliciosos y visto el caso finalmente ante la corte del distrito dicha corte dictó la sentencia condenatoria contra la cual se interpuso el presente recurso de apelación.

██ La prueba de cargo consistió en la declaración del denunciante, en la de su hijo Emiliano, y en las de Luis F. Bula y Monserrate Nieves.

Dijo el denunciante que mandó a arreglar un cuarto de su casa y cuando el carpintero estaba a punto de cobijarlo el acusado Cabán fué al sitio con el otro acusado Felicié y autorizó a éste para que destruyera como destruyó la construcción. No fué testigo presencial del acto. Su hijo sí lo fué.

El hijo manifestó que se encontraba en la casa reconstruyendo una parte de la misma con el maestro Nieves cuando llegaron Cabán, Felicié, el jefe de la policía y el guardia Leiva. Cabán ordenó a Felicié que desarmara la construcción y ''el jaló por una barra y la desbarató y empezó a tirar leña para aquí y para allá. Entonces nosotros dijimos, 'Vámonos.' '' La casa queda en terrenos del Municipio, en el camino viejo que conduce a Ponce. El terreno no es de Cabán. No sabe por qué éste ordenó la destrucción. Cabán tiene finca allí. Los alambres de la colindancia pasaban ''por la parte abajo de la casa.'' No estaban tumbados. A preguntas del juez, contestó que Galeno Cabán adquirió su finca de Cuadro quien le vendió ''del camino viejo para abajo,'' no estando comprendido el solar de la casa en lo vendido.

El testigo Bula se limitó a declarar que había visto al denunciante viviendo en la casa de que se trata desde hacía diez años y que dicho denunciante le llamó la atención sobre ''unos setos que le habían quitado'' pero que él no sabe quién fué.

Nieves, el maestro carpintero, expresó que el denunciante lo mandó buscar para que le arreglara la casita en que vive situada a orillas de la finca de Cabán. Que hizo el trabajo y cuando sólo faltaba la cobija llegaron Cabán, Felicié, el jefe de la policía Delgado y el policía Leiva y le preguntaron por Borrero. Le contestó que estaba su hijo. "Entonces el jefe me dijo que no siguiera el trabajo. Yo obedecí y seguí recogiendo los hierros. Entonces Arcángel Felicié con una barra que se usa entró a desclavar la madera," mandado por Cabán.

Por la defensa declararon Gerardo Delgado, Fernando E. Leiva y el acusado Cabán. El primero, jefe de distrito de la policía en Utuado, reconoce que estuvo en el sitio de los sucesos con Cabán y Leiva y encontró que en terrenos que Galeno Cabán alegaba que eran suyos, "el señor Monserrate Nieves estaba haciendo una ampliación en la parte posterior de la casa y demostraba haber quitado una empalizada que quedaba detrás de la casa y ahí habían picado el terreno y habían puesto las piezas de madera, los zocos y unos travesaños; entonces el señor Galeno dijo que con qué permiso había hecho eso; él dijo que no tenía permiso y dijo que lo había ordenado el señor Borrero; entonces Galeno le dijo: 'Tiene que quitarme eso de ahí.' Y el carpintero dijo: 'Si hay que quitarlo pues yo lo quito,' y empezó a quitarlo. Entonces Arcángel le ayudó a quitarlo . . . ." Fué allí porque Cabán le pidió auxilio pero no tenía mandamiento judicial.

El guardia declaró más o menos en el mismo sentido que el jefe. Cabán contó una larga historia tendente a explicar las dificultades que había tenido con el denunciante a virtud de la casita que tenía en sus terrenos. Niega que diera orden alguna de destrucción. Dice que "el carpintero estaba cortando unos zocos y habían picado tierra en la finca mía," y que el mismo carpintero con la ayuda de Felicié levantó los zocos.

Terminada la práctica de la prueba, el juez sentenciador se expresó como sigue:

"Pónganse de pie el Sr. Galeno y el otro acusado. Yo después que usted declaró me di cuenta de lo que realmente existe en este caso. Según usted, ese señor venía tumbándole unos alambres de su finca y después edificó una casita en terreno suyo. De eso hace tres o cuatro años. Inmediatamente que él edificó esa casita usted debió haber venido aquí con un *injunction* o con algo para sacarlo de allí o con un desahucio. Usted no hizo eso. Lo dejó a él adquirir una posesión sobre esa casita. Como propietario que es usted comprenderá la posición de uno que ha fabricado aunque ha fabricado ilegalmente, pero que lo han consentido. Ahora, para usted hacer algo en esa casita tenía que venir o a la corte municipal o a la corte de distrito. Usted parece que creyó tener derecho a ir allí y destruir algo que se estaba construyendo en esa casita, pero ése no es el derecho de usted. El derecho de usted es ir a la corte para sacarlo de allí si está ilegalmente. Yo creo que usted actuó de buena fe, pero actuó en forma que no es legal. En esas circunstancias no tengo más remedio que dictar sentencia y la corte declara a los acusados culpables y les impone diez pesos de multa a cada uno."

En su alegato el apelante sostiene que la prueba no demuestra la comisión del delito por el cual fueron condenados los acusados. El fiscal en su informe y en el acto de la vista del recurso solicitó que se revocara la sentencia. Refiriéndose a lo dicho por el juez sentenciador, manifestó:

"...No comprendemos realmente cómo la corte inferior después de haber reconocido y expresado en su sentencia que el acusado al realizar el acto que realizó y por el cual fué denunciado actuó de buena fe, frase a nuestro juicio equivalente a 'falta de malicia,' pudo condenar a los acusados, siendo la circunstancia de malicia al realizar el delito un elemento esencial del mismo."

La sentencia será revocada. Para sostener esa conclusión después de conocer los hechos ocurridos a virtud del examen de la prueba y lo expresado por el propio juez sentenciador, bastará citar lo que dijimos también al revocar otra sentencia en el caso de *El Pueblo* v. *Reyes et al.,* 24 D. P.R. 168, 170, a saber:

"El examen de la prueba nos lleva necesariamente a la conclusión de que no existe en este caso el delito de daños maliciosos por el cual han sido condenados los acusados apelantes.

"Toda persona que maliciosamente dañare o destruyere bienes muebles o inmuebles ajenos, dice el artículo 511 de nuestro Código Penal, fuera de los casos especificados en este código, incurrirá en *misdemeanor*.

"La malicia es un elemento esencial que debe ser alegado y probado en. una acusación por tal delito, ha decidido esta Corte Suprema de Puerto Rico en los casos de *El Pueblo* v. *Maldonado,.* 15 D.P.R. 776, y *El Pueblo* v. *Lanausse,* 15 D.P.R. 605, y recientemente en el de *El Pueblo* v. *Valdés,* 23 D.P.R. 713.

"La malicia necesaria para constituir el delito de daños maliciosos, ha sostenido la Corte Suprema de Wyoming, es algo más que· la malicia que ordinariamente se infiere de la realización voluntaria de un acto ilegal sin excusa. Véase el caso de *State* v. *Johnson,* 7 Wyo. 512.

"Para que un delito pueda ser considerado como de daños maliciosos, sostiene el mismo tribunal, debe aparecer que la maldad fué el objeto directo del acto y que no fué incidental a otro acto legal o ilegal. *State* v. *Johnson,* supra."

No deberá entenderse que justificamos en manera alguna. el acto realizado por el acusado Cabán. Aun cuando creyere que le asistía la razón, no estaba autorizado a tomar la justicia por su mano en contra de la voluntad de Borrero y en la forma en que lo hizo. Empero, como tal acto no constituye el delito ·de daños maliciosos por el cual fué condenado en unión de la persona que obedeció sus órdenes, Felicié, nos vemos obligados a revocar la condena. *Otra sentencia será dictada absolviendo a los acusados del dicho delito de daños maliciosos, sin perjuicio de que pueda seguirse contra ellos cualquiera otra acción que pueda estar autorizada por la ley.*